Bissell, J.
This is a suit by the appellees, the Scotts, against Maben to recover damages for the detention of certain personal property. It was not begun by an action technically in replevin to recover the property or its value. The complaint alleged the taking by Maben, the detention of the goods, with a statement of the value of the rents and profits and a demand for judgment of these profits and this value. The complaint was inartificially drawn, and it is difficult to determine whether an action in replevin, in detinue, trespass for the taking, or trover for the conversion was intended, for it lacks some of the essential features of any one of these suits. It is not our purpose to intimate what would have been the appropriate form. We do not pass on the sufficiency of the pleading nor determine when and under what circumstances either one of these actions will lie, nor whether what the plaintiffs state would enable them to recover in the form which they have selected. As we look at it, they failed to make out a case on which they were entitled to judgment and the appeal will be disposed of on this general basis.
The Scotts allege that they were the owners of a portable sawmill, consisting of an engine and boiler with its appurtenances in the shape of gauges, belts, valves, saws, mandrils, a lot of logs, lumber trueles, and various other tools connected with the mill. It was located in the woods on Deep creek where it was set up in the year 1892, having been shipped from Delta the preceding August. It was operated by one of the owners until the spring of 1893, and possibly, during a part of the fall of that year. The parties then left it as it stood, went to another part of the state, and remained away until 1895 or 1896, when this suit was begun. It was charged that in June, 1895, some two years after the mill had been put up Maben took possession of it and detained it from their possession up to the time the suit was brought. There was *121 no allegation of a demand, though whether this was or was not necessary we leave undetermined, because the case as made does not present enough facts upon which we can determine whether the plaintiffs ought to have made one. The defendant answered, denied the taking, denied possession and the detention, and averred that it was never in his control or custody; that he never had anything to do with it, and set up his connection with the property. These allegations were supported by the evidence of one Osgood, who came to the defendant and suggested that the treasurer of Mineral county was about to sell the sawmill for the nonpayment of taxes; that he wanted to buy it, but was without funds, and desired to borrow enough to enable him to bid it in. Maben assented to the request, promised Osgood that he would furnish the money necessary to pay the bid, told him to have the certificate issued in his name and he would hold it as security for the payment of the money thus advanced. This was done. The treasurer sold the property, Osgood bid it in, ordered the certificate made out in Maben’s name and told the treasurer to go to Maben and get his money which he did. When this was done Osgood took possession of the property, fixed it up and put it in shape to run, and afterwards operated it. The mill was moved from its then location where there was no timber to another point where there was, and Maben advanced the money necessary for its removal and to pay the board bills of the men while it was being operated, taking the proceeds of the lumber cut and sold to reimburse himself. The certificate was afterwards indorsed in blank and turned over to one Mackes, Maben receiving his money and Mackes apparently assuming his relation to the property. During the time that Maben held the certificate, one Travis, who was a mortgagee by security given by the Scotts prior to all these occurrences, went, under the direction of the Scotts, to Maben to see whether he could arrange to get rid of the certificate. We are not concerned with this particular phase of the transaction because, as we look at it, it does not bear on the matter decided, but refer *122 to it, because a good deal of stress is laid on the letters which Maben wrote to Travis in regard to it, wherein he stated that the mill would be moved unless he got his money. This might be important under some conditions, but as the case stands it is of little significance. It seems to be conceded by counsel for both sides that the sale by the treasurer was wholly irregular; that he failed to proceed under the statute and that the certificate conveyed no title and Maben really got nothing by way of security except a worthless certificate which could at any time have been vacated or canceled by proper proceedings. We do not intend to rest the decision on this proposition, and hold that because the certificate was worthless, therefore Maben never had any title, and cannot in any way or manner be held to have been in control, or to have had the custody of the property. In this statement of facts we have not only resorted to the answer, but have stated some things which were exhibited by the proof offered by the defendant, which perhaps is unimportant as we look at the case, but it affords a clearer view of what the controversy is. When the plaintiffs came to make their proof they offered no evidence to the point that the defendant was ever in possession of the property other than to produce Maben’s letters,' prove by Chapman that he moved the property and that Maben paid the expense and the evidence of the county treasurer who testified to the sale, the certificate and the payment of the bid by Maben, and that he sold it to Osgood; that Maben was not present at the sale and did not bid it in, and that he made out the certificate according to Osgood’s direction. When it came to proof of value, the only evidence which the plaintiffs produced was the evidence of one of the owners as to the value of the property when he put it there, and as it was when he left it. There is no evidence to show the value at- the time of the sale, or at the date of Maben’s alleged interference with it, at the time of the sale to Osgood, or at the time of its removal from Deep creek. In other words, the plaintiffs wholly failed to make any proof of value on which the jury were entitled to find a verdict. They did not show that Maben *123 ever had possession of the property nor that he detained it, other than as it was evidenced by the certificate which he had taken as security for his advances to Osgood. The defendant promptly made a motion for a nonsuit which the court overruled. The defendant objected and saved an exception. Some question is made as to the necessity of an exception to a judgment where the case is tried to a jury and there is a verdict if the defendant would have the case reviewed on the sufficiency of the proof to support it. It is wholly unnecessary to decide this proposition because it is very clear that where the plaintiff rests and the defendant makes a motion for a nonsuit and it is overruled, and he properly saves his exception, the court is entitled to review the case on the plaintiffs’ proof. The supreme court has so held and about it there is no question. This point is then well saved and we have a right to determine it. The proposition is not at all affected by the defendant’s evidence because he made no proof that in any wise varied or affected or aided the plaintiffs’, simply elaborating the defense which he pleaded and showing clearly his connection with the affair and demonstrating his want of possession and that he had never held or detained the property. There was some evidence offered as to its value but not enough to enable the jury to find a verdict. Osgood did testify that if it was as he bought it, the property might be worth $150, and as it was after he had moved it to timber grounds at an expense of $125 and had spent $225 to put it in condition it might possibly be worth $600, which was the amount for which the court entered judgment after compelling plaintiffs to remit $125, apparently on the basis that it was the value fixed by Osgood. This, however, was not the value at the time the property was taken because there is abundant evidence to show that a large amount of the property for which the plaintiffs sued and which were the attachments of the mill, in the shape of belts, pulleys, trucks, lumber and tools,of various description were not there when the property was taken. On the plaintiffs’ proof unsupplemented by the de *124 fenclant’s evidence the mill at the time Osgood took possession of it, even if we should assume that Maben was chargeable for Osgood’s acts and in reality was the principal, and liable for the detention, was not in the condition nor of the value to which the plaintiffs testified. Wo evidence was given as to what was there or as to the value of the property at the time of the alleged taking. If property was left in the woods in 1893 and consisted largely of portable property there can be no presumption that it was of the same value two years afterwards, or in the same condition. It is incumbent on the party who seeks to recover in an action of this description to show what property the defendant took, the value of it, and if he fails in these essential particulars he is not entitled to recover. Such is the state of this case. There is nothing in the record to show the value of the property when Osgood took it, or the value of it when he detained it. When at the conclusion of a plaintiff’s case it stands without this prerequisite evidence, there is no case to go to the jury and the nonsuit must be granted. There is an equally fatal defect in the failure of the plaintiffs to show that the defendant ever had the custody of the property or ever refused to deliver it. What would have been the result with respect to the latter proposition, if the possession had been proven, to have been in Maben under the treasurer’s certificate, and on demand he had refused to surrender, it is wholly unnecessary to consider.
Several other' questions have been discussed by counsel in their briefs, but since this determines the case it is in our judgment entirely sufficient. We regard the complaint as radically defective and we therefore order the reversal of the judgment, directing the trial court to permit the plaintiffs to amend their pleading as they may be advised to present any issue which in their judgment the case contains, when it can again be tried, if they are so advised.

Reversed.